Good morning, Your Honors. May it please the Court, my name is Reuben Wilson for O'Malveny & Myers. I'm here with Ms. Maya Ouffenheimer from the UCLA School of Law. We're a pro bono counsel for the appellant, Mr. Richard Sexton. Your Honors, at this time I would like to reserve two minutes of time for rebuttal. Well, now, I show that you're speaking for seven minutes. Is that correct? Yes, Your Honor. Well, your side can have two minutes. Yes, sir. All right. But it's up to you. You have to control it between the two of you. Okay. Thank you. Your Honor, I will first be arguing that the district court erred in granting summary judgment to Tommy Bahama because there is significant evidence in the record raising genuine issues of fact. Ms. Ouffenheimer will be arguing that the court erred by summarily rejecting Mr. Sexton's defense based on the doctrine of latches. Your Honors, on this record, a jury could have decided that there was insufficient evidence to find that the five shirts sold by Mr. Sexton in 2004 on eBay were counterfeit. Counsel, I thought it was pretty clear that at least as to two or three of the shirts, they were counterfeit, and that there was an issue of fact on only some of them, let's say half and half. If that is true, how does it ‑‑ and I want you to assume for the purpose of my question that it is correct. Does that affect the answer as to whether summary judgment should be granted or not if there's an issue of fact on some shirts but not others? Is that partial summary judgment? Is that ‑‑ what is that? If I understand your question correctly, you're saying if there's only a question of fact as to some of the shirts but not others. Right. Let's just say there's only one shirt that's in question and the rest are clearly counterfeit. Then what do we do? Well, I think the problem, though, is that the same problem affects the determination. No, no, no. I want you to go with my hypothetical. I want you to assume for the purpose of this question that we know that let's ‑‑ I'm just going to use an arbitrary number, that four are counterfeit and one might be authentic. What then? Well, I think in that case then there's, you know, then I think then there would be a counterfeiting determination because the two marks were counterfeit, so. So I guess the question is if it's a half and half question, who wins? Does Tommy Bahama win because there is at least something counterfeit or do you win because there's a remaining issue of fact as to some? That's what I guess I'm getting at. I guess I would concede that there would not be an issue of fact to be decided if one of the shirts was found to be counterfeit. But what do we have here? Do we have conflicting declarations? What's the basis of your argument that there are genuine issues of fact here? Well, the Court's decision principally relies on a declaration submitted by Tommy Bahama, the declaration of Laura Case, in which the declarant states that they examined computer printouts of Mr. Sexton's eBay advertisements that contained small, three‑inch, low‑resolution photographs of the five shirts and declared that they were not authentic. The problem is that the Court's order never addresses the fact that in 2007, on 14 separate occasions, Tommy Bahama declared that shirts listed by Mr. Sexton were counterfeit based on the same method of examining these low‑resolution photos. But in each of those instances, they were wrong. They inspected those shirts during discovery and were forced to retract those claims. Well, I have a ‑‑ I'm looking at the declaration of Laura Case, and she seems to be saying that none of the five shirts are authentic Bahama shirts. I know that these shirts that were never authorized, containing designs never authorized are manufactured. And what do we do with that? We believe that there's an issue as to whether her declaration is reliable, because on time and time again, Tommy Bahama has examined the photographs contained in these advertisements and erroneously concluded that they were counterfeit. You know, the declarations of Ms. Case, Ms. Bennett and Ms. Heaton each do no more than do a simple visual examination of the eBay ads. And this was never addressed by the Court, and it should have raised a question as to whether Tommy Bahama ‑‑ Okay. But what's the counter declaration? Is there some other declaration? This was summary judgment, right? Yes, Your Honor. Okay. So what can you rely on for authenticity? What do you have going for you there? Well, Mr. Sexton stated that he purchased all of the items from authorized Tommy Bahama dealers. He said he took the photos himself and he listed them for sale. He stated that all of the shirts that he sold on eBay were authentic. How do you make that argument with respect to what I'm thinking of as shirt number four, the floral hibiscus shirt? I just have difficulty with that one, because that was never manufactured in blue, but it's offered for sale in blue. Is this the one that's on the record, page 32 and 33? Page 25, 26, 47, and 50. Well, I think we have to look at what the context for the comparison between these photographs. Tommy Bahama filed a motion for summary judgment and submitted, you know, hundreds of pages from its catalog of black and white photographs, and those photographs are in the record. Mr. Sexton, this is in 2009, Mr. Sexton sold these shirts back in 2004. He was given these and he tried his best to compare the shirts that he had listed on his eBay advertisements to the black and white photographs submitted by Tommy Bahama in their motion for summary judgment, and he did so in his opposition. He stated that he believed that those shirts were the corresponding shirts. Now, in their reply brief, for the first time, Tommy Bahama submitted brand-new color photographs, and that's what the court used for its visual examination. But even if the court decides that these shirts are not the exact shirts depicted in those catalog photographs, that doesn't prove that Mr. Sexton's shirts were counterfeit. It just proves that those are not the they don't correspond to the same photographs listed in the catalog. Tommy Bahama just has not met its burden of proof for showing that these shirts that Mr. Sexton sold were authentic based on these low-quality photographs. Counsel, you have exceeded your own seven minutes, so the clock is ticking. I'm going to turn it over to Ms. Liefenheim. You may do so. MS. LIEFENHEIMER Good morning. May it please the Court. My name is Maya Liefenheimer, UCLA School of Law, Ninth Circuit Appellate Clinic. I will be arguing that the Court erred in summarily dismissing Mr. Sexton's defense of laches on the basis that he did not show prejudice. There's ample evidence in the record of prejudice, most substantially the fact that the shirts were unavailable to prove authenticity. In 2004, after the shirts were removed, Tommy Bahama sent a letter to Mr. Sexton alleging that the shirts were counterfeit. They also said that they would monitor his account, and if they saw any illegitimate merchandise, they would terminate those sales and take legal action. But didn't the wasn't the lawsuit filed within the four-year statute of limitations? Yes, Your Honor, it was filed within the four-year statute of limitations. So no laches issue? Not necessarily, Your Honor. Why? There is a presumption against laches when it comes within the statute of limitations, but that doesn't preclude it. The defendant can overcome that presumption. How quickly were the shirts sold? In other words, between the time that Tommy Bahama said, we think you're selling counterfeit products, and the time he, your client, lost possession of the shirts, how much time elapsed? It's unclear from the record, Your Honor, exactly how much time elapsed, but Mr. Sexton does say that it was over three years before the claim was brought. That's not my question, though, because let me explain why I'm asking it. If he sold them the same day he got the letter, you know, you'd be arguing laches after two weeks. Do you see what I'm saying? Because the fact that the shirts are gone is potentially quite prejudicial to your client. But if they were gone really fast, how does laches operate in that environment? Yes, Your Honor. Well, I understand your argument. It's a question. I understand your question. If the case, though, had brought two weeks after he sold the shirts, after they first wrote this letter to Mr. Sexton, then we would have a very different case because the way that laches works is it's a sliding scale. So the more time that elapsed from the time that Tommy Bahama knew of the claim, the less prejudice that Mr. Sexton has to show. But the prejudice is identical. Correct. But Mr. Sexton has to show more prejudice if the claim was brought sooner to the time that Tommy Bahama knew of the potential claim. Because so much time had elapsed in this case, then the amount of prejudice that Mr. Sexton had to show was less. And in addition to the shirts themselves, there were other ways that Mr. Sexton was prejudiced that perhaps wouldn't have been prejudicial to him two weeks after Tommy Bahama had first found out about this claim. In addition to the shirts themselves, Mr. Sexton would have been able to tell Tommy Bahama where and when he bought the shirts. In this claim, he produced over 600 receipts of merchandise that he sold on eBay, but he was unable to pinpoint which of those receipts matched the shirts in question. Additionally, if the claim had been brought sooner to when Tommy Bahama first found out about the claim, Mr. Sexton would have been able to produce the actual digital photographs. But he could have retained or put together all that information in December of 2004 when he received the notice from Tommy Bahama that they objected to his activities. So why isn't it their obligation to help him put together his side of the case met by that notice? Well, Mr. Sexton believed that the shirts were authentic. And when he relisted the shirts and Tommy Bahama made no objection, even though they said they were monitoring his account for over three years, Mr. Sexton believed that his belief that they were authentic was confirmed and didn't think there would be any future litigation. So even though he got a notice in December 2004 saying these shirts are fake, he didn't think he needed to track down where he got them or make pictures of them or do anything like that? Correct, Your Honor. Tommy Bahama sent a letter saying that they believed that the shirts were counterfeit and that they would monitor his account and remove any illegitimate merchandise. However, they didn't tell Mr. Sexton that he could not relist these shirts. They also didn't ask him to turn over the shirts for authentication. They could have also gone to court and asked for a temporary injunction asking him to not relist the shirts, or also the court could have ordered Tommy Bahama to turn over the shirts or Mr. Sexton to turn over the shirts for authentication. But Tommy Bahama didn't do any of this. Instead, they waited over three years to bring this claim, and Tommy Bahama hasn't proffered any reason for why they waited so long to bring the claim. It is our belief that there's evidence in the record that there's substantial prejudice to Mr. Sexton, and the court ignored all of this evidence. Therefore, we would ask the court that you reverse the decision and remand it to the court so that they can reconsider the prejudice that is in the record. If there are no other questions, we'd like to reserve our time for rebuttal. You may do so, counsel. Thank you. We'll hear from Tommy Bahama. Thank you, counsel. Good morning. Peter Maringolo from Snyder, Miller & Orton on behalf of Tommy Bahama Group. I notice our clerk's order or docket sheet says pro bono. That's not quite right, is it? No, Tommy Bahama is paying. So keep it going. But the other counsel are pro bono, and we appreciate their taking on cases for our benefit. I will start with the laches question, just because it's freshest in my mind. Judge Graber, I believe, hit the nail on the head on this issue of when did Mr. Sexton sell the insurance? The record is perfectly clear that Tommy Bahama objected to the sale of these shirts immediately. What is unclear in the record, and there is nothing in the record, as to when did Mr. Sexton actually sell the shirts. In fact, the only evidence of him actually selling the shirts was in his delectable affidavit that was filed. Easy for you to say. It was filed with his opposition to the summary judgment motion. That's the first time there was any evidence that he sold the shirt. A big issue in this case is what does an intellectual property rights holder such as Tommy Bahama do with eBay? There's a ton and ton of counterfeit products sold on eBay. There is a Vero program that lets them monitor, allows them to monitor eBay, but it's a big problem. And this, I submit there's no evidence in here in the record, but to put the burden on Tommy Bahama to constantly monitor whether. Well, the burden is on Tommy Bahama to prove that there's a counterfeit product. I mean, you brought the suit. Correct. The burden is yours. You don't deny that, do you? I do not. But I'm saying on this laches point, right, so the prejudice. The issue here is was Mr. Sexton prejudiced? What the law requires is that they bring a suit within the statute of limitations period. And the question is when did they learn or what did they do? They told they objected to the sale of it. And that was what they were required to do. At that point, it put Mr. Sexton on notice not to sell the shirts. And then when he sold the shirts, that was at his peril. And he cannot now claim prejudice that I sold the shirts and now I have no evidence to prove that. Let me get to the merits question. Because I think that one of the sticking points in this case for me is that there was at least one other occasion on which Tommy Bahama claimed that shirts were counterfeit when they actually were genuine. So it's not 100% sure when you look on eBay that you've made the right judgment. And what is the best evidence in this record that there's no possibility of mistake with respect to at least one of these items? Well, I believe that it goes back to if we just put it in context of you start with the 2004 shirts. What was the evidence submitted at the trial court level that those shirts were counterfeit? Is that the case declaration? Exactly. So Laura Case is a merchandising supervisor with Tommy Bahama, 13 years of experience, personal knowledge of Tommy Bahama's designs. She testified based on her experience that based on her review of the advertisements put on eBay by Mr. Sexton that those were not patterns ever made by Tommy Bahama. What Mr. Sexton is arguing in this case for the first time on appeal, so it was never even assessed at the trial court level, is they got other shirts wrong. And so if you look at the other shirts they got wrong were in 2007, what those shirts were were copycat designs. So in other words, they were designs that were true Tommy Bahama designs, but they were the most often counterfeited. And so to answer your question. But what does that tell us? Well, to answer your question, on eBay to click that you have a good faith belief that something is counterfeit doesn't mean it's an absolute statement that it's counterfeit. They have a good faith belief. Which gets to my main concern, and that is we're here on summary judgment. And you have a conflict between both sides. One side saying that it is genuine. The other side saying it's a counterfeit. And it looks as if Judge LaPorte was making a factual determination. We can't do that on summary judgment. Your Honor, I don't believe that there was any conflicting evidence in this case. Well, isn't Mr. Sexton's position that these were genuine? Isn't that conflicting evidence? He submitted no evidence. He just said his belief that they were authentic. He submitted. But isn't the burden on Tommy Bahama? Correct. And so the burden was. It's not on Mr. Sexton. It's on Tommy Bahama. The burden. Well, the burden is on Tommy Bahama to present evidence. It flips to Mr. Sexton to put that evidence in dispute. He did not put it in dispute because he did not submit any evidence. There was no evidence of where he got these shirts. Where he got it, when he bought it. He admits that he kept no records of the individual transactions. So the evidence supporting him is that the expert had made mistakes before and that the quality pictures that he took to sell these shirts on eBay were very low, so it was hard to tell. Correct. And there's no evidence that the expert, if you will, in this case, made a wrong determination ever. So what they're trying to do is take a different witness and a different set of shirts for different circumstances and say that calls into question this case's credibility. And it doesn't line up that way, frankly. But her declaration was based only on a review of printouts of the 2004 listings by Sexton. Correct. So if I understand her declaration, she's looking at everything manufactured by Tommy Bahama from 1998 through 2004 and comparing that to the photographs that the defendant here put on eBay, is that? She is first basing it solely on her personal knowledge. So her first statement is, I know the designs. The second backup is, I looked through the catalogs. But the period of time she looked from 1998 through 2004, so she looked at a six-year period and said, these shirts, which I think he sold as new, at least some of them, weren't. I mean, the issue there is when would a retailer have sold? So if he said he bought them at Macy's, he never said when he bought them. But had he bought them in a 2004 shirt, it would have had them in 2004. He couldn't have purchased it before. He couldn't have purchased a 1998 shirt in 2003. It wouldn't be off the rack. But aren't these jury questions? Well, the jury question. For example, if the Laura case appeared on the stand, couldn't the jury discount her testimony or even disbelieve it? But there was nothing to dispute her testimony in the evidence before the trial court. So there was nothing for the jury to decide. Because the 2007 events did not involve her. Exactly. Nor do they involve the 2004. I mean, we don't know. But the evidence that's put in on the other side does not say that she was involved. Correct. I mean, they don't involve this case, nor do they involve the 2004 shirts. So two different shirts. Two different sets of shirts. I suppose one can always disbelieve an expert, but that's not a standard on summary. Correct. And she was an employee of Tommy Bahama, so not really an expert testimony. I think what makes it awkward, to some extent, at least for me, is that usually these kinds of visual comparisons are not 100% easy to do. And it feels more like fact-finding when you're actually looking at pictures. And I'm not sure how to phrase this as a question, but is this the type of determination that is forbidden to be made on summary judgment? Well, I found one case, the Yerman Studio case. What? I'm sorry? The Yerman Studio case. It's cited in my papers. I don't have the site. I can get it for you. But it shows a determination on summary judgment based on photographs. And Judge Graber asked the question earlier, well, what happens if it's two out of three or three out of four or whatever? Again, that case shows they found counterfeiting on some pictures, not on others. And they said it's a basis for finding counterfeiting. How else would you do it if you're talking about items that have been sold and you're monitoring eBay other than pictures? Honestly, no other way of doing it. And probably in a typical scenario, Mr. Sexton or someone would bring forward receipts and say, look, I bought these. He had made a first sales argument that he doesn't make on appeal. But, I mean, that's the way it would shake out. The Court tried to determine, you know, whether or not this would be a ‑‑ would there be a reasonable jury that would find otherwise, because there really was no other evidence of authenticity submitted by Mr. Sexton. Thank you, Your Honor. Thank you, counsel. Mr. Wilson, you have about two minutes. Thank you, Your Honor. What about this issue? Mr. Sexton offered no evidence whatsoever other than his own say‑so? Well, I believe that his evidence was his declaration and the information that he submitted in his briefs. You know, the district court created it. But respond to Mr. Merenglo's points. What evidence was before Judge LaPorte of the authenticity of the shirts? Well, he testified that he bought all of the shirts that he had purchased from Tommy Bahama retailers in the Bay Area. Were there any receipts offered, photos of the shirts that he said he took, things like that? Well, he produced the ‑‑ you know, he had 600 receipts that he offered, but he wasn't able to pinpoint which receipts corresponded to those shirts because of the passage of time. I think that one of the ‑‑ I mean, the problem here is that with the passage of time, all that Tommy Bahama can rely on to prove his counterfeiting claim are these old, blurry photographs. And the court, you know, when the court has been in front of him ‑‑ But that isn't all that it relied on. Case's declaration says that she's personally familiar with all of the designs from 2004, and these don't resemble any of the authentic designs. But Tommy Bahama is unable to actually tell what is depicted in those eBay photos. They've done it wrong time and time again. That should have gone to a jury. Well, they did it wrong three years later, but how does that say that this was wrong? You know, at the very minimum, it raises a fact question that should have went to a jury. But why? A jury might have believed Tommy Bahama and might have agreed that the shirts were counterfeit, but it also may have come to the opposite conclusion and believed there's just not enough evidence here. And I think that the cases that Mr. Maringolo mentioned, the Uriman case, is a perfect example, because in that case, the court looked at, you know, a dozen different photos. And as to 10 of 11 products at issue there, the court said, you know, there's just too much detail in these photographs to actually make a determination. It needs to be a factual question. The only cases ‑‑ the only cases the court allowed to be decided on summary judgment in that case were ones that was a very simple screw design that didn't involve heavy subjective judgment. So if you had an allegedly authentic Tommy Bahama men's shirt in bright purple, and you said on eBay this is a bright purple shirt, and you had an affidavit from Tommy Bahama's employee saying we have never manufactured a single men's shirt in bright purple, that you would have to go to a jury with that? You'd have to go to a jury with that if you had other declarations saying that's not true and pointing out that they've often mistakenly said that they never sell purple shirts, but in this, you know, that they actually did. All right. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. And we will hear argument next in United States v. Johnson. And, again, we thank you for participating in our pro bono. Thank you. Thank you.
judges: Schroeder, O'scannlain, Graber